IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OLIVER MEDLOCK, JR.,                    )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Case No. 07-2013-JPO
                                        )
OTSUKA PHARMACEUTICAL, INC.,            )
et al.,                                 )
                                        )
                    Defendants.         )

**MEMORANDUM AND ORDER**

I.  Introduction

        This is an employment discrimination case.  On January 10, 2007, the plaintiff, Oliver

Medlock, Jr., pro se, sued his former employer, defendant Otsuka America Pharmaceutical,

Inc. ("OAPI").[1]  In plaintiff's original complaint (doc. 1), he alleged that OAPI had violated

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").  On March 22,

2007, before OAPI filed a responsive pleading, plaintiff filed his amended complaint (doc.

10), adding claims against four OAPI employees, namely, Phillip F. Gilbert, Hoan Tran,

---

[1] The captions on plaintiff's original complaint (doc. 1) and amended complaint (doc.
10) state that the corporate defendant's name is Otsuka Pharmaceutical, Inc.  But it seems
clear from the text of those pleadings, as well as the answer (doc. 15), that the proper name
of the company is Otsuka America Pharmaceutical, Inc.

Lorraine Daly, and Colette Went (the "individual defendants"),[2] and asserting various claims under the Kansas Act Against Discrimination ("KAAD") and the Kansas Age Discrimination in Employment Act ("KADEA").[3] All of the defendants named in the amended complaint filed a joint answer on April 13, 2007 (doc. 15).

On May 23, 2007, the court conducted a scheduling conference with the pro se plaintiff and defense counsel. Among other deadlines and settings, the court reflected in its scheduling order that all discovery had to be completed by August 31, 2007 (doc. 20 at 4). On June 22, 2007, with the written consent of all parties, this case was reassigned for ultimate disposition, from the presiding U.S. District Judge, Hon. Julie A. Robinson, to the undersigned U.S. Magistrate Judge, James P. O'Hara (*see* doc. 32). The case is now before the court on four separate, though related motions: (1) OAPI's partial motion to dismiss the KAAD, KADEA, and certain other claims in the amended complaint, which was filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on June 15, 2007 (**doc. 28**); (2) the four

---

[2] Mr. Gilbert allegedly was plaintiff's immediate supervisor and the district manger for OAPI in Kansas City. Mr. Tran allegedly was OAPI's west regional manager, and Ms. Daly and Ms. Went are alleged to have worked in OAPI's human resources department.

[3] As noted by defendants, plaintiff does not *specifically* cite to KAAD or KADEA in his amended complaint. But defendants apparently assume plaintiff intended to assert KAAD and KADEA claims, since he attached to the amended complaint charges of discrimination that he cross-filed with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). In any event, the court deems these administrative charge documents to be part of the amended complaint. *See* Fed. R. Civ. P. 10(c). *See also Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.")

individual defendants' motion to dismiss all of the claims against them in the amended complaint, which filed pursuant to Fed. R. Civ. P. 12(b)(6) concurrent with OAPI's motion to dismiss (**doc. 30**); (3) OAPI and the individual defendants' joint motion for dismissal of this entire case as a discovery sanction, which was filed on September 7, 2007 pursuant to Fed. R. Civ. P. 37(b) and 41(b) (**doc. 66**); and (4) OAPI and the individual defendants' joint motion to strike a supplement brief that plaintiff filed without leave of court, which was filed on November 28, 2007 (**doc. 76**).

The instant motions have been thoroughly briefed.[4] The court is now prepared to rule. As explained below, OAPI's partial motion to dismiss will be granted except as relates to one particular claim. The individual defendants' motion to dismiss will be granted. The motion for dismissal as a discovery sanction will be granted. And the motion to strike will be denied.

II. OAPI and the Individual Defendants' Separate Motions to Dismiss,
and All Defendants' Joint Motion to Strike

A.    Background

Plaintiff was hired by OAPI in November 1998 and, at least as of October 2006, held the position of senior pharmaceutical sales representative. On October 19, 2006, plaintiff's

---

[4] The briefs related to OAPI's motion to dismiss (doc. 28) are docs. 29, 35, 49, 52, 54, and 75. The briefs related to the individual defendants' motion to dismiss (doc. 30) are docs. 31, 35, 48, and 52. The briefs related to OAPI and the individual defendants' sanctions-related motion for dismissal (doc. 66) are docs. 67, 70, 72, 75, 77 (same as doc. 67 only filed under seal), and 78 (same as doc. 72 only filed under seal). The briefs related to the motion to strike (doc. 76) are docs. 79 and 80.

employment with OAPI was terminated, following a physical confrontation with his supervisor, defendant Phillip F. Gilbert, on October 4, 2006.  Plaintiff was charged with battery in the Municipal Court of Topeka, Kansas.  He was convicted but appealed to the District Court of Shawnee County, Kansas, where the case was tried de novo.  On November 6, 2007, plaintiff was acquitted by a jury of battering Mr. Gilbert.

The day after the above-described confrontation (October 5, 2006), plaintiff submitted a charge of discrimination to the KHRC and the EEOC.  On October 16, 2006, the EEOC issued a right-to-sue notice to plaintiff.

As earlier indicated, on January 10, 2007, plaintiff filed this suit against OAPI, alleging violations of Title VII and the ADEA.  On January 11, 2007, plaintiff submitted a second charge of discrimination to the KHRC and the EEOC and, on January 25, 2007, the EEOC issued plaintiff another right-to-sue notice.

On March 22, 2007, plaintiff filed his amended complaint (doc. 10) which, as mentioned earlier, added the individual defendants and which has been construed by all of the defendants as asserting claims under KAAD and KADEA.  In the amended complaint, plaintiff specifically notes  that, on October 24, 2006, he filed a complaint with the "Human Rights Organization" in Topeka, Kansas, and that the administrative complaint was "still under investigation."  The "statement of claim" section of the amended complaint, filled out by plaintiff on a court-supplied preprinted form, states in pertinent part:

> From the moment that Phil Gilbert became District Manager in Kansas City 2003-2004? He has repeatedly harassed and discriminated against me.  Frequently saying to me "You should

see what is in your employment file!!" He has discriminated against and harassed and retaliated because of my age and race and other reasons. This eventually led to my forced termination on 10/19/06.
- Termination of employment-failure to promote
- Unequal terms and conditions of employment
- Reduction in wages.

Human Resource Dept within Otsuka condoned this blatant treatment of me.

On June 15, 2007, OAPI filed its partial motion to dismiss which, if granted, would leave in the case only plaintiff's federal discriminatory termination and retaliatory hostile work environment claims (doc. 28).  The same day, the individual defendants filed a separate motion to dismiss, essentially arguing that plaintiff had failed to state *any* claim against them, because as a matter of law there is no individual liability under the employment discrimination statutes at issue (doc. 30).

Plaintiff did not respond to either of the above-described motions to dismiss within the twenty-three day period that applies to dispositive motions under D. Kan. Rule 6.1(d)(2). On July 11, 2007, therefore, defendants filed a joint brief requesting their respective motions be granted as unopposed, in accordance with D. Kan. Rule 7.4 (doc. 35).  Instead of simply acting on defendants' suggestion, in an abundance of caution (recognizing plaintiff was pro se), the court entered an order on July 17, 2007 directing him to show good cause by July 27, 2007 why he had failed to respond timely to the two motions (doc. 36).

Plaintiff, on July 20, 2007, plaintiff timely responded to the court's show cause order (doc. 48). Plaintiff stated he was voluntarily dismissing the individual defendants.  Concurrent with

his response to the show cause order, plaintiff filed separate notices requesting the voluntary dismissal of each of the four individual defendants, without prejudice to those claims being re-filed later (docs. 44-47).

As to OAPI's motion to dismiss, plaintiff stated in his response to the show cause order that he did not know how to ask for more time to respond to OAPI's motion, but subsequently "learned he could have done so." Plaintiff requested the court give him more time to file his response, which he had done concurrently with his response to the show cause order (*see* doc. 49).

On July 24, 2007, the individual defendants responded to plaintiff's notices of dismissal, correctly observing that, under Fed. R. Civ. P. 41(a)(2), plaintiff was not entitled to unilaterally dismiss the individual defendants without their consent because they already had filed an answer, and stating that they refused to consent to a voluntary dismissal without prejudice (*see* doc. 50). The individual defendants requested the court rule on the merits of their prior-filed motion to dismiss (i.e., doc. 30) or, if the court determined the motion was not dispositive of all the claims against them, then the court should proceed to the requested dismissal by plaintiff only after he properly filed a motion for such an order (instead of unilateral notice of dismissal) and provided notice and opportunity for defendants to respond, as contemplated by Rule 41(a)(2).

On November 20, 2007, without first asking for or obtaining leave of court, plaintiff filed a "Supplement to Opposition of Defendant Otsuka's Motion to Dismiss" (the "supplement") (doc. 75). The sole purpose of the supplement appears to be to inform the

court that on November 6, 2007, plaintiff had been acquitted by a jury on the charge of battering Mr. Gilbert.  On November 28, 2007, all of the defendants filed a motion to strike the supplement on the grounds it was filed without leave of court and the information provided had nothing to do with OAPI's motion to dismiss and did not have any preclusive effect in this case (doc. 76).  Plaintiff did not timely respond to this motion within the fourteen-day period allowed for a response to a non-dispositive motion under D. Kan. 6.1(d)(1).  Thus, on December 13, 2007, defendants filed a brief requesting their motion to strike be granted as unopposed in accordance with D. Kan. Rule 7.4 (doc. 79).  On December 28, 2007, plaintiff finally filed a response to the motion to strike (doc. 80).

B.      Analysis

The court will start by addressing defendants' argument that the pending Rule 12(b) motions to dismiss should be granted due to plaintiff's failure to file timely responses.  As mentioned above, under D. Kan. Rule 6.1(d), a party has twenty-three days to respond to a dispositive motion and fourteen days to respond to a non-dispositive motion; if the party fails to file a response to a motion within the time allowed, under D. Kan. Rule 7.4, the motion "will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."

It is uncontroverted that plaintiff failed to timely respond to defendants' motions to dismiss.  In his response to the show cause order (doc. 48), plaintiff's only excuse for failing to timely respond to defendants' motions is that he is proceeding pro se.  But it is well-established that a party is not excused from complying with court rules simply because he

is proceeding pro se, and thus he is subject to the consequences of noncompliance.[5] Moreover, plaintiff has failed to establish that his failure to timely respond was the result of "excusable neglect" within the meaning of Fed. R. Civ. P. 6(b)(1)(B).[6] Nevertheless, given the record presented, and for purposes of any appeal that might ensue, the court deems it impractical to grant defendants' motions to dismiss solely on a default basis. The court, therefore, will address the merits of OAPI and the individual defendants' motions to dismiss.

Before addressing the merits of these motions, however, the court also believes it should pause and deal with defendants' motion to strike (doc. 76) the supplement (doc. 75). Under this court's local rules, specifically, D. Kan. Rule 7.1(c), a non-moving party generally is required to file a responsive brief, and then the movant has the option to file a reply brief, at which time the briefing is closed absent further order of the court. There is no provision in this court's rules for the filing of any other papers, whether they are called a "supplement," sur-reply, further response, or something else.

It is undisputed plaintiff failed to seek leave of the court before filing the supplement. Making matters worse, after defendants moved to strike the supplement, plaintiff failed to timely respond to the motion to strike. Defendants properly requested the motion to strike

---

[5] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[6] Formerly Fed. R. Civ. P. 6(b)(2), amended December 1, 2007. This rule, as amended, provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of *excusable neglect.*" (emphasis added).

be granted as unopposed.  Only then did plaintiff finally respond to the motion to strike, and even that was late.

Here again, technically the court *could* grant defendants' motion to strike solely on a default basis.  Instead, the court will exercise its discretion and decline to strike plaintiff's supplement.  The court will consider the supplement for what it is worth, which is very little.  That is, the court finds as a matter of law that the supplement (and whether plaintiff ultimately was acquitted of battering his boss) has little or no bearing in ruling OAPI's Rule 12(b)(1) and 12(b)(6) motion to dismiss.  In any event, the motion to strike (doc. 76) is denied.

The court next turns to the four individual defendants' motion to dismiss.  It is quite apparent that plaintiff does not wish to pursue his claims against these defendants, as evidenced by the statement in his response to the show cause order, as well as the filing of the notices of dismissal.  Moreover, plaintiff has provided nothing to support the proposition that there is any legal merit to his claims against the individual defendants.[7]  Further, as to whether the dismissal should be with or without prejudice to the claims being re-filed by plaintiff at a later time, it is significant that, after defendants filed their response to plaintiff's

---

[7] The employment discrimination statements on which plaintiff relies do *not* provide for *individual* liability of a corporate employer's employees.  *See Haynes v. Williams*, 88 F.3d 898, 900 (10th Cir. 1996) (Title VII); *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (ADEA); *White v. Midwest Office Tech., Inc.*, 979 F. Supp. 1354, 1355-56 (D. Kan. 1997) (KAAD); *Ditch v. Board of County Comm'rs of Shawnee County, Kan.*, 650 F. Supp. 1245, 1252 (D. Kan. 1986) (ADEA); *Long v. City of Kan. City, Kan.*, No. 93-2073, 1994 WL 327796, at *4 (D. Kan. June 30, 1994) (KADEA).

notice of dismissal, arguing that the dismissals should be with prejudice, plaintiff did not respond in any way.

The court's analysis is guided by the following principles:

> Federal Rule of Civil Procedure 41(a)(2) governs voluntary dismissals after the opposing party has filed an answer or motion for summary judgment.  Once a defendant has filed an answer, as was the case here, a plaintiff may voluntarily dismiss an action only upon order of the court.  Fed. R. Civ. P. 41(a)(2).  Rule 41(a)(2) "is designed 'primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.' "  *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993) (citations omitted).  Absent "legal prejudice" to the defendant, the district court normally should grant such a dismissal.  *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997).  The parameters of what constitutes "legal prejudice" are not completely clear, but factors the Tenth Circuit has held the district court should consider include: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of the litigation."  *Id.* (citing *Phillips U.S.A., Inc. v. Allflex U.S.A., Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)).  Each factor does not have to favor the moving party for dismissal to be appropriate, nor does each factor need to favor the opposing party for denial of the motion to be proper.  *Id.* (citing *Phillips U.S.A., Inc.*, 77 F.3d at 358).

> It is also important to note that the above list of factors is not exclusive, and the district court should also consider any other relevant factors.  *Id.* (citing *Phillips U.S.A., Inc.*, 77 F.3d at 358).  The court should "endeavor to insure substantial justice is accorded to both parties."  *Id.* (citing 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2364 at 278 (2d ed.1994)).  Therefore, the court should consider the equities facing not only the defendant but also the plaintiff.  *Id.* (citing Wright and Miller, Federal Practice and Procedure § 2364 at 278).  Finally, when considering a motion to dismiss, the important factors in determining legal prejudice are those

involving the parties, not the court's time or effort spent on the case. *Id.* (citing *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993)).[8]

The court has carefully considered and weighed all of the factors outlined above. To summarize, though, the court finds based on the record presented that the individual defendants' clearly and decidedly would suffer legal prejudice if they were left at any risk, however remote, of plaintiff re-filing this case against them at a later date.

It is obvious from the record that the individual defendants have put extensive (and presumably expensive) effort into litigating plaintiff's claims; that plaintiff has been extremely lax in prosecuting his claims; that plaintiff has not bothered to provide any indication that he even has any intention of pursuing any claims against the individual defendants at a later time; and finally, that plaintiff has made his request for a voluntary dismissal very late in the discovery and pretrial process. Therefore, the court concludes that this case should be dismissed, with prejudice, as to the individual defendants, Phillip Gilbert, Hoan Tran, Lorraine Daly, and Colette Went.

The court now turns to OAPI's motion to dismiss. On the merits (i.e., aside from OAPI's sanctions-based motion for dismissal discussed in Section III below), OAPI seeks dismissal of plaintiff's KAAD and KADEA claims and, for that matter, all claims in the amended complaint *except* the federal discriminatory termination and retaliatory hostile work environment claims.

_____

[8] *McCoy v. Whirlpool Corp.*, 204 F.R.D. 471, 472-73 (D. Kan. 2001).

First, defendant OAPI argues that plaintiff's state law claims under KAAD and KADEA claims should be dismissed for lack of subject matter jurisdiction because plaintiff failed to exhaust his available administrative remedies.[9]  In response, plaintiff argues that he did exhaust his administrative remedies as to his age discrimination claim because the charge was dismissed "by the commission on its own initiative."  Plaintiff attached a letter he had received from the KHRC, informing him that his administrative complaint was being dismissed because he had instituted this civil suit based on the same allegations as the complaint filed with the KHRC.  In reply, OAPI correctly infers that, since plaintiff only responded as to his claims under the KADEA, the dismissal of any KAAD claim is essentially conceded.

OAPI specifically argues that plaintiff's KADEA claim should be dismissed because he failed to petition for reconsideration, and receive a denial from the KHRC on such a petition, before filing this case.  In this regard, it is important to keep in mind that a plaintiff may not file suit based on either KAAD or KADEA before exhausting *all* administrative remedies,[10] which has been interpreted as meaning that the employee must seek and get a ruling on a petition for reconsideration of an unfavorable determination by the KHRC.

> "The burden is on plaintiff to plead either that he has exhausted his administrative remedies, or that exhaustion of administrative remedies is not required in his case."  *Butler v. Capitol Fed. Sav.*, 904 F.Supp. 1230, 1234 (D. Kan. 1995)

---

[9] *Young v. Desco Coatings of Kan., Inc.*, 179 F.R.D. 610, 612 (D. Kan. 1998).

[10] *See* K.S.A. §§ 44-1010, 1111 to 1121.

(quoting *Wrenn v. Kansas*, 561 F.Supp. 1216, 1222 (D. Kan. 1983)); see also, *Clary v. Marley Cooling Tower Co.*, No. Civ. A. 96-2277-KHV, 1997 WL 150048, at *11 (D. Kan. Mar. 12, 1997).  Under K.S.A. 44-1010, as applicable to actions brought under KADEA, "[n]o cause of action arising out of any order or decision of the commission shall accrue in any court," unless the party dissatisfied with the decision of the KHRC has petitioned the Commission for reconsideration.  **"Before a plaintiff may litigate any KAAD claims in court, plaintiff must first receive an unfavorable determination from the KHRC, file for reconsideration of that unfavorable determination and then receive a denial of the reconsideration application."** *Davidson v. MAC Equipment, Inc.*, 878 F.Supp. 186, 189 (D. Kan. 1995) (citing *Simmons v. Vliets Farmers Coop. Ass'n.*, 19 Kan.App.2d 1, 861 P.2d 1345 (1993)).  **By virtue of K.S.A. 44-1115, a plaintiff in a KADEA case must pursue the same administrative remedies.**  See *Clary*, 1997 WL 150048, at *11.[11]

There is nothing in the amended complaint, or elsewhere in the record, to indicate that plaintiff ever filed for reconsideration of the administrative dismissal.  Moreover, plaintiff has not disputed OAPI's assertion that he failed to petition KHRC to reconsider its decision.  Thus, plaintiff failed to exhaust all of his available administrative remedies as to his KAAD and KADEA claims.  It follows that court must dismiss the KAAD and KADEA claims for lack of subject matter jurisdiction.

OAPI also argues that plaintiff's claims under Title VII and ADEA, except his discriminatory termination and retaliatory hostile work environment claims, should be dismissed for lack of jurisdiction for failure to exhaust federal administrative remedies.

---

[11] *O'Loughlin v. Pritchard Corp.*, 972 F. Supp. 1352, 1361 (D. Kan. 1997) (emphasis added).

More specifically, OAPI argues that plaintiff's allegations of "W-2 Tampering," "Salary

Tampering," "Criminal Management Supervision," "Failure to Promote," "Unequal Terms

and Conditions of Employment," "Reduction in Wage," and discrimination based on so-

called "Other Reasons" were not administratively exhausted, in that they are not reasonably

related to the EEOC charges filed by plaintiff.  In this regard, the court notes:

> Exhaustion of administrative remedies is a jurisdictional
> prerequisite to bringing suit under Title VII.  *See Simms v.*
> *Oklahoma ex rel. Dep't of Mental Health & Substance Abuse*
> *Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Seymore v.*
> *Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997).  To
> exhaust administrative remedies, a Title VII plaintiff generally
> must present her claims to the EEOC as part of her timely filed
> EEOC "charge" for which she has received a right-to-sue letter.
> *See Simms*, 165 F.3d at 1326.  The charge "shall be in writing
> and signed and shall be verified," 29 C.F.R. § 1601.9, and must
> at a minimum identify the parties and "describe generally the
> action or practices complained of," id. § 1601.12(b).  The charge
> tells the EEOC what to investigate, provides it with the
> opportunity to conciliate the claim, and gives the charged party
> notice of the alleged violation.  *See Seymore*, 111 F.3d at 799;
> 29 C.F.R. § 1601.14(a) (requiring EEOC generally to send copy
> of charge to charged party or respondent within ten days of its
> filing).  Thus, requiring a plaintiff to have first presented her
> claims in her EEOC charge before being allowed to bring suit
> serves the dual purposes of ensuring the EEOC has the
> opportunity to investigate and conciliate the claims and of
> providing notice to the charged party of the claims against it.
> *See Seymore*, 111 F.3d at 799; *cf. Schnellbaecher v. Baskin*
> *Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989) ("[A]llowing a
> complaint to encompass allegations outside the ambit of the
> predicate EEOC charge would circumvent the EEOC's
> investigatory and conciliatory role, as well as deprive the
> charged party of notice of the charge, as surely as would an
> initial failure to file a timely EEOC charge.") (quotation

omitted).[12]

In his October 2006-charge with the KHRC and the EEOC, plaintiff checked the

boxes for race, color, sex, retaliation, and age discrimination.  In the "particulars" section of

the charge, plaintiff wrote:

> I.    I was hired by Respondent on or about 11/98 and currently hold a position as a Sr. Pharmaceutical Sales Rep.
>
> II.   I have been subjected to harassment, and this includes terms and conditions of my employment, for example, in wages, evaluations, supervision, discipline, etc.
>
> III.  I believe this was discrimination against me because of my race, black, my color, my sex, male, in violation of Title VII and because of my age, 52, in violation of the Age Discrimination in Employment Act, and retaliation against me for opposing acts made unlawful under those statutes.

In his January 2007-charge with the KHRC and the EEOC, plaintiff checked the boxes

for race, retaliation, and age.  In the "particulars" section of this charge, plaintiff wrote:

> I.    I was hired by Respondent on or about 11/98 and I currently hold a position as a Sr. Pharmaceutical Sales Rep.
>
> II.   I was terminated on 10/19/06 for having a physical altercation with my supervisor, Phil Gilbert, on 10/4/06. Phil Gilbert was not terminated for participating in this fight which he started by first hitting me.  Phil Gilbert was the initial and primary aggressor.   Phil Gilbert

---

[12] *Bland v. Kansas City, Kan. Cmty. Coll.*, 271 F. Supp. 2d 1280, 1283 (D. Kan. 2003); *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (discussing similar exhaustion requirements for purposes of ADEA).

choked me in 2004 after a meeting.  I did not physically retaliate, but reported the incident to Human Resources.  After that time, I also reported to Human Resources that Phil Gilbert treated me in a racial manner.  Phil Gilbert was not terminated for choking me, nor was he disciplined for choking me or for any of his racial treatment of me.  Phil Gilbert is white.

III.  I filed an official complaint of discrimination with Respondent in 4/06, against Phil Gilbert, with Lorraine Daley, HR, Colette Went, HR, Hoan Tran, West Regional Director and Phil Gilbert, Supervisor.   In retaliation, Phil Gilbert attempted to falsify my sample inventory count by a substantial number of units.  He was not successful at falsifying these counts.  After he failed there, Phil Gilbert retaliated by creating a hostile work environment against me by creating impossible deadlines, increasing the number of hostile e-mails, increased tele-conferences between Phil, increased territory ride alongs, Hoan Tran and myself for the alleged purpose of training me, yelling at me in front of other people, etc.

IV.  Respondent failed to take effective action with respect to my complaint.

As to "W-2 Tampering," "Salary Tampering," "Criminal Management Supervision," "Failure to Promote," and discrimination based on "Other Reasons," plaintiff conspicuously makes no mention of these claims in his response to OAPI's motion to dismiss.  Thus, the court infers plaintiff essentially concedes that he did not exhaust his remedies with respect to these claims, i.e., plaintiff has failed to identify where these claims were referenced in either of his administrative charges.  The court could dismiss the claims on this basis alone.  However, the court also finds, upon review of plaintiff's administrative charges, that neither of the charges mentions these claims.  Further, the court concludes as a matter of law that the

claims do not come within any of the exceptions to the exhaustion rule recognized by the Tenth Circuit Court of Appeals, in that these claims are not "like or reasonably related to" any of the claims referenced in his charges and it is not reasonable to conclude that any of the claims would "fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."[13] The court concludes, therefore, that plaintiff failed to exhaust his administrative remedies with respect to these claims. These claims must be dismissed for lack of subject matter jurisdiction.

The court next turns to plaintiff's "Unequal Terms and Conditions of Employment," and "Reduction in Wage" claims. Plaintiff argues that he exhausted his remedies with respect to the "Unequal Terms and Conditions of Employment" claim, citing to paragraph II of his October 2006-charge and paragraphs III and IV of his January 2007-charge. Plaintiff also argues that he exhausted his remedies with respect to the "Reduction in Wage" claim, citing the April 2006 internal complaint that is referred to in his January 2007-charge. The court finds that the above-described references in plaintiff's two administrative charges do "describe generally the action or practices complained of" and were adequate to tell the EEOC what to investigate, provide it with the opportunity to conciliate the claims, and give OAPI notice of the alleged violation. The court, therefore, finds that plaintiff did exhaust his administrative remedies as to these two particular claims.

OAPI further argues, however, that even if not barred on exhaustion grounds,

---

[13] *Bland*, 271 F. Supp. 2d at 1284 (citing *Simms*, 165 F.3d at 1327; *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir. 1993)).

plaintiff's claims of "W-2 Tampering," "Salary Tampering," "Criminal Management Supervision," "Failure to Promote," "Unequal Terms and Conditions of Employment," "Reduction in Wage," and discrimination based on "Other Reasons" should be dismissed. Here, OAPI relies on Fed. R. Civ. P. 12(b)(6) and argues that, as a matter of law, plaintiff has failed to state any claim upon which relief can be granted.

It is important to keep in mind that "while the court should liberally construe a pro se plaintiff's complaint, 'the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.'"[14]

> The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly* , --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S.Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122

---

[14] *Lewis v. Kansas*, No. 04-2366, 2005 WL 1229732, at *2 (D. Kan. May 24, 2005) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).[15]

Mindful of the standards set forth above, the court has carefully considered the allegations in the amended complaint, as well as the allegations contained in both of plaintiff's administrative charges.  The court finds, as a matter of law, they are merely conclusory and thus wholly inadequate to state any claim upon which relief could be granted for so-called "W-2 Tampering," "Salary Tampering," "Criminal Management Supervision," "Reduction in Wage," discrimination based on "Other Reasons," and "Failure to Promote." The court therefore dismisses these claims pursuant to Rule 12(b)(6).

But, as to the one claim styled as "Unequal Terms and Conditions of Employment," which the court has found plaintiff properly exhausted his administrative remedies, the court finds that plaintiff, albeit just barely, has stated a claim upon which relief can be granted. The court, therefore, declines to dismiss this claim given the very liberal pleading standards outlined above that apply for purposes of Rule 12(b)(6) motions.  In Section III below, the court will analyze whether this claim should be dismissed as a discovery sanction.

### III.  Defendants' Motion for Dismissal as a Sanction

As explained in Section II above, the court has concluded that one claim by plaintiff against OAPI survived a challenge under Rule 12(b)(6), and further concluded that plaintiff's voluntary dismissal of his claims against the four individual defendants should be with prejudice to any later re-filing of those claims.  Mindful that OAPI's Rule 12(b)(6) motion

---

[15] *Raytheon Aircraft Co. v. United States*, 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007).

did not directly challenge plaintiff's federal discriminatory termination and retaliatory hostile work environment claims, and for purposes of the record on any appeal that plaintiff may elect to file, the court will address all five defendants' joint motion for dismissal of this entire case as a discovery sanction pursuant to Fed. R. Civ. P. 37(b) and 41(b) (doc. 66).

A.      Background

The procedural history pertinent to defendants' sanctions-based motion is as follows. As earlier indicated, on May 23, 2007, after conferring with the pro se plaintiff and defense counsel, the court filed its scheduling order, establishing various deadlines including an August 31, 2007-deadline to complete all discovery (doc. 20).  On May 24, 2007, OAPI served its first set of interrogatories and document requests (*see* doc. 22).  Document Request No. 26 asked for "[a]ll documents which reflect, refer or relate to any efforts made by you [plaintiff] to secure employment or otherwise mitigate your damages from October 2006 and continuing through the date of trial."  Plaintiff's responses to these discovery requests were due June 26, 2007.

On or about June 4 and 5, 2007, the individual defendants served their respective first sets of interrogatories and document requests (*see* doc. 23-25).  Plaintiff's responses to these various discovery requests were due July 9, 2007.

As required by the scheduling order, defendants timely served their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on June 8, 2007.  Plaintiff did not timely serve his initial disclosures.  In response to repeated requests by defendants, plaintiff served his disclosures on June 15, 2007.  Plaintiff, however, did not produce any documents with these disclosures.

Plaintiff failed to timely respond to OAPI's above-described discovery requests.  In the memorandum in support of their motion for dismissal as sanction, defendants represent that plaintiff sought and received an extension through June 29, 2007 to respond in full to that discovery.  However, such extension must have been by stipulation of the parties under Fed. R. Civ. P. 29, as there is no order granting such extension in the court file.  On June 30, 2007, plaintiff served a response only to OAPI's document requests, which defendants argue was insufficient.  There is no evidence in the record that plaintiff has ever responded to OAPI's interrogatories.  Nor is there any evidence that plaintiff has ever responded to any of the discovery requests served by the individual defendants.

On July 18, 2007, OAPI filed a motion to compel with regard to its first set of discovery requests (doc. 37).  And, on July 20, 2007, the individual defendants filed a separate motion to compel with regard their first set of discovery requests (doc. 39).

On July 20, 2007, OAPI served requests for admissions and its second set of requests for production of documents and interrogatories (*see* doc. 43).  Also on July 20, 2007, defendants filed a motion for an extension of time in which to serve their expert disclosures (doc. 41), which the court granted (doc. 42).

On August 6, 2007, defendants filed a second motion for extension to serve expert disclosures and asked the court to sanction plaintiff by disallowing any rebuttal expert by plaintiff (doc. 57).  On August 10, 2007, the court granted the motion (doc. 60).

Also, on August 10, 2007, the court entered an order granting defendants' motions to compel, on the basis that plaintiff had failed to file any timely opposition, and ordered

plaintiff to respond to defendants' discovery requests by August 31, 2007 (doc. 59).  The court also cautioned plaintiff that "failure to comply with this order may result in the imposition of sanctions which may include dismissal of this case."

On August 22, 2007, defendants filed a motion for extension of the discovery period for the limited purposes of taking plaintiff's deposition, discovery matters related to plaintiff's only named witness (Dianne Shaw), and any issues that arose from plaintiff's anticipated discovery responses (doc. 62).   On August 27, 2007, the court granted defendants' motion, extending the discovery period to September 28, 2007 for the limited purposes noted above (doc. 64).

Defendants claim they suggested, and plaintiff agreed, that they would conduct a partial deposition of plaintiff on August 28, 2007, and reconvene the deposition at a later date once plaintiff had served full and complete discovery responses.  As properly noticed, plaintiff's deposition commenced at the courthouse on August 28, 2007.   During the deposition, plaintiff claimed he had relevant documents in his possession that he apparently intended to rely on in the case.[16]

During the deposition, plaintiff testified he would not meet the August 31, 2007-deadline set by the court in its August 10, 2007-order for the production of documents and other discovery responses.[17]   He testified he would respond by September 11, 2007.

---

[16] Plaintiff's Deposition Transcript at 23-24 (*see* doc. 77, Ex. A).

[17] *Id.* at 23-24.

Defendants claim that plaintiff's alleged excuse of being too busy to produce the requested documents led their lawyer to explore the details of plaintiff's appointments during August 2007, including interviews with prospective employers.  Plaintiff testified that between August 1 and August 28, 2007, he had interviewed with at least two and perhaps three pharmaceutical companies.[18]

Later during the deposition, plaintiff testified that he carries a calendar with him, which he had in his breast pocket and consulted at the deposition, that would have "90 plus percent" of his appointments and employment interviews.[19] Defense counsel, understandably and reasonably, requested the calendar from plaintiff, on the basis that the appointments and interviews allegedly on the calendar were directly relevant to the issue of mitigation of damages.[20]  Plaintiff refused to hand over the calendar, despite admitting the calendar contained information relating to his efforts to find new employment.[21]  During a break in the deposition, which was longer than normal at the request of plaintiff, he left the courthouse and hid the calendar.  When the deposition commenced, plaintiff refused to disclose where he had hidden the calendar.[22]  Defendants then sought court intervention.

Later in the afternoon, the court held a hearing related to plaintiff's refusal to produce

---

[18] *Id.* at 27.

[19] *Id.* at 151.

[20] *Id.* at 26-27, 151-52.

[21] *Id.* at 151-52.

[22] *Id.* at 187-88.

the calendar and other discovery misconduct.  The exact dialogue between the court and plaintiff is critical to understanding the court's ultimate ruling.  However, rather than set forth the entire transcript[23] in this already lengthy order, the court simply has attached the transcript to this order, and incorporates it by reference.  But what follows is a brief synopsis of what occurred during the hearing.

Defense counsel initially explained to the court that plaintiff had refused to produce a calendar that had been on his person at the deposition, that plaintiff subsequently hid the calendar and refused to disclose its whereabouts, that the calendar relates to mitigation efforts, which were, among other things, covered by Request No. 26 in OAPI's first set of document requests and subject to the August 10, 2007-order, and that the calendar relates to plaintiff's alleged excuses for his planned and intentional refusal to abide by the court's August 10, 2007-order (doc. 26).

In response, plaintiff stated he had promised defense counsel that he would produce the documents covered under the court's August 10, 2007-order by August 31, 2007, including the calendar, but first wanted to review it and possibly redact portions concerning his children and parents.[24]  Plaintiff then refused to disclose even the location of the calendar

---

[23] Transcript of Hearing on August 28, 2007.  The transcript was filed under seal (docs. 71 and 77) in conjunction with the briefing on the instant motion to dismiss.  However, the court finds that good cause does not exist to maintain it under seal as there is nothing contained within the transcript that is of a confidential nature.  This memorandum and order, therefore, will not be sealed.

[24] *Id.* at 6-7.

to the court, despite defendants' acknowledgment that any confidential information would be subject to the protective order previously entered in this case and held for "attorneys' eyes only" (*see* doc. 26), and despite the court's warning to plaintiff that his refusal would provide a basis for a motion to dismiss. The court, not yet making any specific ruling or order, recessed the hearing for ten minutes to allow plaintiff to consider his decision privately.[25] The court's thinking was that, upon reflection, plaintiff might realize that he had staked out a wholly untenable legal position.

When the hearing recommenced, however, plaintiff continued to refuse to produce the calendar. The court then specifically ordered its production.[26] Again, plaintiff refused.[27] The court then warned plaintiff a second time that failing to comply with the court's order to produce the calendar essentially would "hand[] to the defendants a basis to seek the dismissal of this case as a sanction." Plaintiff stated that he understood.[28]

Defendants then moved orally for dismissal.[29] The court warned plaintiff for the third time of the severe effect that his refusal to comply with the court order would likely have on his case, stating that the court "would be inclined to grant that motion [to dismiss]" and

---

[25] *Id.* at 8, 10-11, 14.

[26] *Id.* at 16-17.

[27] *Id.* at 17.

[28] *Id.*

[29] *Id.*

giving plaintiff "one last chance" to comply.[30]

Plaintiff again refused to comply, stating that he understood the court's warning of dismissal, but he would nonetheless "stay with [his] position."[31] The court then orally stayed the case. On September 1, 2007, the court entered an order memorializing its rulings (doc. 65).

B.     Analysis

Defendants request that the court dismiss this entire case as a sanction for plaintiffs' refusal to timely provide compliant Rule 26(a)(1) disclosures, produce documents, respond to interrogatories, meet discovery deadlines and, most notably, comply with the court's direct order regarding the production of plaintiff's calendar. Plaintiff raises various arguments as to why his case should not be dismissed. Plaintiff first argues that he was not under any obligation, either by court order or deposition notice, to produce his calendar at the August 28, 2007-deposition. Plaintiff argues that the court had previously allowed him until August 31, 2007 to respond to the outstanding discovery requests and he was relying on this order. Plaintiff argues that, during the deposition, defendants had no proof they had even requested the calendar in discovery. Plaintiff argues that, without such proof, the court should have denied defendants' motion to compel him to produce the calendar at that time and ordered that the deposition continue. Plaintiff argues that defendants cannot demonstrate harm or

_____

[30] *Id.* at 19.

[31] *Id*. at 20.

prejudice by defendants as a result of having to wait until August 31, 2007 to receive the documents subject to discovery.   Plaintiff claims that, pursuant to the orders of the court, defendants intended to take a portion of his deposition on August 28, 2007, and then, after he produced the outstanding discovery on August 31, 2007, would have until September 28, 2007 to schedule a follow-up deposition to address issues arising from his discovery responses.   Lastly, plaintiff argues that, in defendants' memorandum, they "allege things which have nothing to do with the matters before the court now," i.e., the issue of whether his refusal to hand over his calendar justifies sanctions against him.

"A district court undoubtedly has discretion to sanction a party for failing to prosecute . . . a case, or for failing to comply with local or federal procedural rules."[32]   The rules authorize sanctions, including dismissal, for conduct such as failing to obey discovery orders, Fed. R. Civ. P. 37(b)(2)(A),[33] or failing to comply with court rules or a court order, Fed. R. Civ. P. 41(b).   The appropriateness of a dismissal sanction under either rule is a determination made under the same criteria.[34]

> Because of its severity as a sanction, dismissal should "be predicated upon 'willfulness, bad faith, or [some] fault of petitioner' rather than inability to comply," *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 636, 640(19)), and

---

[32] *Llamas v. City of Topeka, Kan.,* No. 04-4080, 2005 WL 767848, at *4 (D. Kan. Mar. 8, 2005) (quoting *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)).

[33] Formerly Fed. R. Civ. P.  37(b)(2)(C), amended December 1, 2007.

[34] *Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994).

"should be imposed only if a 'lesser sanction would not serve the ends of justice,' " *LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2003) (quoting Reed, 312 F.3d at 1195).  The sanctioning court should "evaluate the following factors on the record:  (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."  *Gripe v. City of Enid, Okl.*, 312 F.3d 1184, 1188 (10th Cir. 2002) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).  "[T]hese factors are not a 'rigid test,' " for deciding the appropriate sanction "is a fact specific inquiry that the district court is in the best position to make."  *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d at 1174 (quoting *Ehrenhaus*, 965 F.2d at 920-21).  "It is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice."  *Ehrenhaus*, 965 F.2d at 918.[35]

"Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."[36]

With regard to the first  factor, the court finds defendants have suffered actual prejudice as a result of plaintiff's failure to comply with discovery rules and the court's directives.  Were plaintiff's conduct allowed to go unsanctioned, the court in effect would be countenancing the destruction or, at the very least, selective alteration of material evidence.  Very simply, this cannot and will not be tolerated by this court.

---

[35] *Llamas,* 2005 WL 767848, at *4; *see also Hopkins v. J.C. Penney Co.*, 227 F.R.D. 347, 351 (D. Kan. 2004).

[36] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n. 7 (10th Cir. 1988)).

Further, aside from the calendar issue, defendants have been prejudiced by plaintiff's *continued* failure to timely provide the requested discovery and comply with the court's deadlines.  While plaintiff attempts to narrow the focus to just his failure to turn over the calendar to defendants, the above-described procedural history evidences plaintiff's consistent failure to comply with the orders of the court and rules of procedure.  Plaintiff's failure to timely produce discovery in this case has greatly hindered defendants' ability to proceed through discovery and adequately prepare for trial.  Plaintiff's willful defiance of the court's order to produce the calendar essentially stopped *all* proceedings in this case.  In addition, defense counsel has expended considerable time and effort in contacting plaintiff in their attempts to obtain discovery from him.  Defendants have also had to expend additional time and resources to file and respond to numerous filings related to plaintiff's disregard for deadlines and court orders.  Because of plaintiff's failure to timely produce his calendar, his deposition was interrupted and defendants were left with having to file an additional motion to dismiss.  This factor weighs strongly in favor of dismissal.

The second factor concerns interference with the judicial process.  "Failure to comply with the rules of discovery often makes it impossible for cases 'to proceed with any degree of regularity or to be resolved in a "just, speedy and inexpensive" manner.'"[37] Plaintiff's repeated failure to provide the requested discovery has caused delay which has disrupted the judicial process.  As stated above, plaintiff's failure to produce the calendar resulted in the

---

[37] *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 649_ (D. Kan. 1999) (quoting *FDIC v. Renda*, 126 F.R.D. 70, 73 (D. Kan. 1989)).

necessity of a hearing, the filing of a motion to dismiss, and the staying of the case pending the court's ruling.  This factor also weighs in favor of dismissal.

The third factor concerns the culpability of plaintiff.  Since plaintiff is proceeding pro se, he is solely culpable.  This factor weighs in favor of dismissal.

The fourth factor concerns notice.   The record contains *repeated* warnings by the court that failure to comply with court orders and rules of procedure may result in dismissal as a sanction.[38]  During the hearing at the deposition, the court, on three separate occasions warned the plaintiff that his failure to produce his calendar may result in dismissal of his case as a sanction.  Notwithstanding these warnings directly from the court, plaintiff willfully refused.  This factor weighs in favor of dismissal.

The fifth and final factor concerns the offering of imposing of a lesser sanction. Plaintiff suggests that the appropriate sanction would be to exclude any evidence produced after the August 31, 2007-deadline.  Plaintiff fails, however, to take into account his pattern of  disregard for deadlines and court orders.  It is the combination of plaintiff's failure to timely produce discovery, respond to motions, and comply with the rules of procedure that warrants the imposition of a severe sanction such as dismissal.  This factor also weighs in favor of dismissal.

Lastly, the court addresses plaintiff's various arguments.  The court initially finds plaintiff's reliance on the August 31, 2007-deadline as an excuse for withholding the

---

[38] *See* docs. 36 and 59.

calendar wholly unfounded.  Clearly, plaintiff should have produced his calendar in response to OAPI's Request No. 26.  The calendar containing plaintiff's interviews is directly related to defendants' failure-to-mitigate damages defense.  Plaintiff, however, failed to respond to this discovery until ordered to do so by the court.  Furthermore, the court's order provided that plaintiff respond **no later than** August 31, 2007 (emphasis added).  Plaintiff was not precluded from producing any documents or responses prior to that date.

In any event, the court finds it was within its discretion to order the calendar produced pursuant to Rule 612 of the Federal Rules of Evidence, which applies to a pretrial deposition by virtue of Fed. R. Civ. P. 30(c)(1).  The transcript evidences numerous times when plaintiff used his calendar to refresh his recollection.  In doing so, defendants were entitled to have the calendar produced at that time to allow them to inspect it and use it to cross-examine plaintiff during the deposition.[39]

Plaintiff's argument that he had a right to object to the discovery request is unfounded. Plaintiff did not timely respond to any of the defendants' discovery requests, thus waiving any right he might have had to object.[40]  As to plaintiff's claims regarding the "personal" nature of information contained in the calendar, it could have been produced subject to the protective order as suggested by defense counsel as well as the court during the August 28, 2007-hearing.

---

[39] *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 406-08 (D. Kan. 1998).

[40] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 303 (D. Kan. 1996) (failure to answer or object in a timely manner constitutes waiver of any right to object).

The court is of the opinion that the aggravating factors discussed above all heavily outweigh the presumption in favor of resolution on the merits. Therefore, the court finds plaintiff's case should be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 37(b)(2)(A) and 41(b).

## IV.   Conclusion and Order

In consideration of the foregoing, the court believes that *all* of plaintiff's claims in this case should be dismissed, with prejudice. Without limitation of the foregoing,

IT HEREBY ORDERED:

1.     OAPI's partial motion to dismiss the KAAD, the KADEA, and certain other claims in the amended complaint (**doc. 28**) is granted in part and denied in part. To the extent granted, this dismissal is with prejudice.

2.     The four individual defendants' motion to dismiss all claims against them in the amended complaint (**doc. 30**) is granted. This dismissal is with prejudice.

3.     OAPI and the individual defendants' joint motion for dismissal of all claims in this case as a discovery sanction (**doc. 66**) is granted. This dismissal is with prejudice.

4.     OAPI and the individual defendants' motion to strike one of plaintiff's filings (**doc. 76**) is denied.

5.     The Clerk's Office is directed to enter a separate judgment against plaintiff and in favor of OAPI and the individual defendants on all claims, as provided by Fed. R. Civ. P. 58. Court cost shall be assessed against plaintiff. The court makes no award at this time of attorneys' fees and will not do unless and until defendants comply with Fed. R. Civ. P.

54(d)(2) and  D. Kan. Rule 54.2.

      6.      Copies of this memorandum and order, and the accompanying judgment, shall be mailed by the Clerk's Office to plaintiff by regular and certified mail, return receipt requested.  Copies of the same shall be electronically served on defense counsel of record via the court's Electronic Case Filing ("ECF") System.

      Dated this 29th day of January 2008, at Kansas City, Kansas.

                     s/James P. O'Hara
                    James P. O'Hara
                    U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


OLIVER MEDLOCK,

                    Plaintiff,

vs.                                    No. 07-2013-JPO


OTSUKA AMERICA

PHARMACEUTICAL, INC., et al.,

                    Defendants.



        HEARING BEFORE MAGISTRATE O'HARA,

reported by Marilyn Romine Mattix, CSR, CCR

1084, RPR, on August 28, 2007, at the United

States Courthouse, 500 State Avenue, Kansas

City, Kansas.

```
 1                    APPEARANCES

 2           Appearing pro se was the Plaintiff,

 3    Mr. Oliver Medlock, 11407 West 77th Street,

 4    Shawnee, KS 66214.

 5           Appearing for the Defendants was

 6    Mr. John R. Ates of Albo & Oblon, LLP, 2200

 7    Clarendon Boulevard, Suite 1201, Arlington, VA

 8    22201; and Mr. J. Nick Badgerow of Spencer,

 9    Fane, Britt & Browne, LLP, 9401 Indian Creek

10    Parkway, Suite 700, Overland Park, KS

11    66210-2005.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              P R O C E E D I N G S

2              THE COURT:   Let's go on the

3    record stenographically and kind of bring me up

4    to speed, in terms of what the dispute might be.

5              MR. ATES:   Your Honor, we're here

6    for the deposition of the plaintiff in this

7    case, who's representing himself; and this is

8    the first part of a two-day deposition, that the

9    parties have agreed on.

10             Today, we walked through the fact that

11   Mr. Medlock has information, on a calendar, that

12   he keeps on his person, that relates to

13   mitigation efforts, and that relates to perhaps

14   an alleged excuse as to why he may not meet the

15   Court's August 31 deadline for producing

16   responsive documents in this case.

17             Earlier, on the record, he indicated he

18   would not meet the Court's deadline in producing

19   certain documents, and he said he would provide

20   them by September.

21             I went through what his August

22   scheduled was, as to why in the world he

23   couldn't copy 50 pages of material and produce

24   them to us by August 31st.

25             And, again, as I mentioned, his

1   calendar contains appointments and interviews

2   that he has supposedly gone on in an effort to

3   mitigate his damages in this case.

4           Earlier, on the record, he showed that

5   calendar on the tape.  I asked him to please see

6   it, so I could review it, in part because today

7   this witness is candidly admitting he's having

8   trouble recalling events, and that certain

9   things may refresh his recollection.

10          I don't think I have closed any door on

11  the record here today, quite frankly, Your

12  Honor.  So I wanted it for that purpose, as

13  well.

14          We took a break, at Mr. Medlock's

15  request, a 10-minute or so break.  We came back,

16  and on the record, I asked whether he still had

17  his calendar on him, and he said no.

18          I asked where he put it.  He would not

19  reveal it on the record.  So based on that, what

20  we are -- we are concerned about spoliation

21  issues.  Obviously, he's taken the calendar and

22  hidden it.

23          What we would prefer is if the Court

24  wants to hold the calendar until the 31st, we'll

25  bring someone over here to copy it.  If

1   Mr. Medlock has concerns about personal

2   information that may not be related to the case,

3   on his calendar, he indicate to the Court or us

4   what he wants redacted.

5            That's where we are, or otherwise if I

6   could review it and assist this witness in

7   refreshing his recollection as to when things

8   occur, so that we can get a clear record and

9   this deposition doesn't drag out.

10           THE COURT:  Counsel -- I'll give

11  you an opportunity to weigh in on this issue in

12  a moment.

13           Is the calendar among the documents

14  that were the subject of the defendant's first

15  request for production of document, and which

16  was the subject of my motion -- or my order

17  compelling?

18           MR. ATES:  Yes, sir, it was.  I

19  believe it was Otsuka's request -- There's five

20  defendants here, individuals and the company.

21  Each of them has submitted certain discovery.

22           I believe it was in Defendant Otsuka's

23  first request for production of documents that

24  we requested mitigation-related items.  I don't

25  have that request on me, Your Honor.

1              THE COURT:  What is the discovery

2    cutoff date?

3              MR. ATES:  The discovery cutoff

4    date is August 31st, Your Honor, and therefore

5    any discovery needed to be propounded by July

6    31 -- or August 1.

7         And that's the situation we're in,

8    where we still don't have any documents.  We're

9    trying to go forward as best as we can, and yet

10   we can't even get documents that are here today,

11   in order to move this case along.

12             THE COURT:  Okay.  Sir?

13             THE WITNESS:  That's -- Much of

14   what he said is not true.  I told him that I

15   would have everything that he wanted by

16   August 31st.  He asked me about my calendar.  I

17   said I have it.  I said I have not used this

18   calendar to help prepare me for this particular

19   deposition.

20         Anything that they have sent to me has

21   already been gone through and redacted.  All the

22   information you don't want me to see has already

23   been taken out; and so I said, allow me to do

24   the same I thing.  It's a personal calendar.

25         I have things in there concerning my

1   children.  I have things concerning my parents,

2   that I don't want you or anyone else to see.

3          It has nothing to do with this.  As far

4   as me not answering questions and not having a

5   good memory, that's not the case.  Whatever you

6   have asked me -- and I told you that I have a

7   memory that works on sounds and pictures and

8   just recall, when you use certain words; and

9   that's what I have done.

10         You have gone a half hour into a

11  conversation; and as you talk about something,

12  I'll say, "You know what, here's what I remember

13  about what you asked me 30 minutes ago."

14         So I have done everything I can to be

15  respectful to you and your position.  I have not

16  tried to deceive you or deceive the Court in any

17  way.  The date says the 31st, and I promised

18  you, and I told you on the record that I will

19  give you everything you want on the 31st.  But

20  the calendar was not used to help me prepare

21  myself for this deposition.

22              THE COURT:  Mr. Medlock, do you

23  have possession of all the documents that you're

24  obligated to produce by August 31st?

25              THE WITNESS:  I believe that I

1   do.

2                   THE  COURT:   And  you  have  those  at

3   home,  I  presume?

4                   THE  WITNESS:   Yes.

5                   THE  COURT:   And  is  this

6   deposition  concluding  tomorrow?

7                   MR.  ATES:   This  deposition,  we

8   have  agreed,  will  conclude  in  September,  at  some

9   later  scheduled  date.   We,  quite  frankly,  Your

10  Honor,  were  trying  to  move  it  along  as  best  as

11  we  could.

12                  MR.  BADGEROW:   You  had  issued  an

13  order  extending  discovery  for  the  limited

14  purpose  of  completing  that  deposition  and  two

15  other  items.

16                  THE  COURT:   Mr.  Medlock,  where  is

17  the  calendar?

18                  THE  WITNESS:   I  have  it  off

19  premise  somewhere,  sir.   That's  the  only  thing

20  I'll  give.   That's  the  only  answer  I'll  give.

21  Not  to  be  disrespectful  to  your  position,  but

22  that's  the  only  answer  I'll  give;  and  I  promise

23  to  give  it  to  them  on  the  31st,  along  with  the

24  other  items  that  they  have  asked  for,  employment

25  searches,  newspaper  clippings,  Internet  sites,

1   all of those things.

2             THE COURT:  Did you take it off

3   premises earlier today?

4             THE WITNESS:  I took it off

5   premise when we took the break; and the break

6   was initiated by him; but I also stated, "Can I

7   have 10 minutes instead of 5?"

8             THE COURT:  That was earlier

9   today?

10            THE WITNESS:  Yes, that was an

11  hour or so ago.

12            MR. BADGEROIW:  After we

13  contacted your bailiff about seeing you on the

14  issue.

15            THE COURT:  Have you gone home

16  today?

17            THE WITNESS:  No, not in that

18  10 minutes, sir.

19            THE COURT:  I don't want --

20            THE WITNESS:  The reason I say

21  that is because I live in Johnson County, so I

22  couldn't do that and come back.

23            THE COURT:  May I safely infer

24  that the calendar is in your car?

25            THE WITNESS:  No.  Actually, no,

1  that would be too easy.

2                 THE COURT:  We're going to take a

3  short break, and I'm going to give you a little

4  chance to think about this.  I think you're

5  backing yourself into a corner that you don't

6  want to be in.

7           I would be unsurprised if there were

8  personal irrelevant information not in this

9  calendar.  I mean, that's a very common place to

10  see that; but that's not a big deal in this kind

11  of case; and I would strongly urge you to

12  reconsider your position.

13           If you insist, I can't -- I'm not going

14  to beat you up.  I'm not going to arm wrestle

15  you for this calender; but if the circumstances

16  that have been represented by counsel today are

17  born out by the record, then the next shoe

18  that's going to drop, I suspect, is a motion to

19  dismiss the case with a sanction or to exclude

20  certain claims based on spoliation or ruining

21  evidence.

22                 THE WITNESS:  But --

23                 THE COURT:  Let me finish, sir.

24                 THE WITNESS:  All right.

25                 THE COURT:  And that's a -- it

1    seems to me, in the big scheme of things, an

2    unfortunate and unnecessary thing to have

3    happen.

4              Is there a protective order on file?

5                   MR. ATES:  There is a protective

6    order, Your Honor.

7                   THE COURT:  Is there any

8    perceived need on the part of defense counsel to

9    show any part of this calendar to the defendants

10   themselves?  I mean, is there any reason this

11   couldn't be an attorneys-eyes-only?

12                  MR. ATES:  I believe it could be

13   attorneys-eyes-only, Your Honor.  If it mentions

14   an incident with a representative of Otsuka,

15   then even then I would have the date, and all,

16   so I think we can do that.

17                  THE COURT:  Let's take a short

18   break.  I want you, sir, to have a chance to

19   visit -- or think about this privately.  I am

20   strongly inclined to order this to be produced,

21   if it is within the ambit of the request for

22   production of documents that was made earlier,

23   and within the ambit of the order that I entered

24   back on August 10th; and this -- this strikes me

25   as -- irrespective of whether the defendants

1   have redacted material that you think should not

2   have been redacted, this sounds like

3   gamesmanship to me, and --

4                    THE WITNESS:  It sounds like

5   what?

6                    THE COURT:  Gamesmanship.

7                    THE WITNESS:  What is that?

8                    THE COURT:  You're playing games.

9                    THE WITNESS:  Oh, games.

10                   THE COURT:  I think this ought to

11  be produced.  I'm strongly inclined to order it

12  to be produced.  I would rather you voluntarily

13  turn it over, pursuant to the protective order,

14  designated as confidential.

15        So we'll recess this deposition for

16  10 minutes, and then we will reconvene and take

17  the issue up at that time.

18        Do you have any questions, sir?

19                   THE WITNESS:  No.  Just the fact

20  that I have been very forthright and that the

21  order says the 31st; and I understand what you

22  are saying, but the order does say the 31st,

23  which is not today.

24                   THE COURT:  But so we're clear

25  about that, when this motion to compel was

Page 13

1    filed, it was not timely opposed, and I --

2    perhaps shame on me -- decided to cut you a

3    break, in recognition of the fact that you're

4    representing yourself, and give you three more

5    weeks to produce the information.

6          Had I known that this deposition was

7    scheduled to be taken today, you can bet your

8    bottom dollar, I would have ordered the calender

9    and all the other material to be produced a few

10   days in advance of this, so counsel could have

11   the benefit of it and ask you questions about

12   that material.

13         So I wouldn't attach too much

14   significance to August 31st, because it's

15   certainly within my prerogative to advance that

16   to August 28th at 4:42.

17                   THE WITNESS:  I understand.

18                   THE COURT:  But this does strike

19   me as kind of a tempest in a teapot.  I would

20   like you to think about it.  If you want to slug

21   it out on motions, I'll give each side an

22   opportunity to do that; but it seems to me to be

23   a bad use of all of your valuable time, not to

24   mention mine.  So we'll reconvene in 10 minutes.

25                   MR. ATES:  Thank you, Your Honor.

1              THE WITNESS:  Thank you.

2              (Recess.)

3              THE COURT:  We're back on the

4    record.  Mr. Medlock, have you had a chance to

5    reconsider your position?

6              THE WITNESS:  Well, I have

7    thought about it, sir; and the only thing I have

8    to say is that just as I have had to trust them

9    with information when I have requested it,

10   especially the information concerning salary for

11   the entire sales group within Otsuka, I had to

12   trust them that what they sent me was accurate,

13   I'm simply asking them to trust me.  If they

14   want this, I'll be more than happy to have it to

15   them by tomorrow, but not today.

16         And there's no spoilage issue.  I have

17   no intention of changing anything.  I trusted

18   you.  Please trust me.

19              THE COURT:  Any response by the

20   defendants?

21              MR. ATES:  It hampers our ability

22   to conduct an efficient deposition.  It hampers

23   our ability to be able to get information to

24   refresh his recollection.

25         And this isn't a matter about trust.

1   It's a matter of he had it on him.  It could be

2   used to refresh his recollection.  When it

3   became an issue, he then takes it away and won't

4   even tell this court where it is; and I do think

5   that raises issues related to the integrity of

6   the document going forward and at a minimum I

7   believe this gentleman should turn it into the

8   Court.

9                  THE COURT:  Mr. Medlock?

10                  THE WITNESS:  I believe that

11  again, one day is not going to make any

12  difference.  You asked about a calendar, and had

13  I said, no, I didn't have it, you would have

14  proceeded, and we would have had the same

15  discussion that we have had now.

16              And I have done a very good job of

17  answering your questions; and there's nothing

18  wrong with my memory, provided you ask the right

19  questions, and you have done that.

20              But again, as far as spoilage, not at

21  all.  If you want the document -- and no

22  disrespect to you, sir, or what you're about to

23  say -- I will keep it, but I'll give it to you

24  tomorrow, but not today.

25                  THE COURT:  Mr. Medlock, am I

1   correct that during the break of today's testimony, you

2   have not gone further than 10 minutes from the

3   courthouse?

4                   THE WITNESS:  Well, yeah -- Well,

5   no, because I think I came back in maybe 15; 12,

6   15, something like that.

7                   THE COURT:  Which would not be

8   long enough time to get out to Johnson County?

9                   THE WITNESS:  No; and I mentioned

10  that when you were in earlier.

11                  THE COURT:  Sir, I appreciate

12  what you have said about trust, and that's a

13  two-way street certainly; but I think, under the

14  circumstances that have been represented to me

15  on the record here today, as a practical matter,

16  you're asking defense counsel to suspend their

17  disbelief about a very suspicious set of

18  circumstances, and I think that's unreasonable.

19          I am going to order you to produce the

20  document, and at a minimum, to the Court, so

21  that we do not even have the potential for

22  further issues about what may have been done

23  with the calendar between that time today, when

24  this first issue -- or this issue first cropped

25  up and now; so I am ordering you to produce it,

1   and to turn possession of that over to one of my

2   law clerks.  Are you willing to do that?

3                   THE WITNESS:  With all due

4   respect, sir, I can't do that.  There's just

5   information there concerning my parents and my

6   children that is -- should not be witnessed by

7   anyone except me.

8                   THE COURT:  Sir, I'm going to --

9   Again, I don't have the physical power to arm

10  wrestle you for it, and I'm going to

11  respectfully decline any temptation to call the

12  marshals in there and force them to have you

13  turn it over; but again, I think what you're

14  doing is you are inadvertently, I suspect,

15  handing to the defendants a basis to seek the

16  dismissal of this case as a sanction, which

17  would be unfortunate, because that would result

18  in a determination of this case on a basis other

19  than that having to do with its merits.

20                  THE WITNESS:  I understand.  I

21  don't agree, but I understand.

22                  MR. ATES:  Your Honor, we

23  actually would make that oral motion today.  We

24  feel that we have given this pro se plaintiff --

25  we have taken the high road throughout, Your

1    Honor.  We have given this pro se plaintiff

2    abundant time to prosecute his case.  He was

3    served with discovery in May and in early June.

4    It was due in late -- late June and early July.

5    We haven't gotten anything, other than somewhat

6    of a response on Otsuka's document requests, but

7    no documents.

8         He has admitted on the record there's

9    50 documents, at least, that he has, including

10   this calendar -- in addition to the calendar;

11   and what we would ask is that at a minimum, that

12   the case be dismissed with prejudice, for

13   failure to prosecute, for failure to abide by --

14   continuing failure to abide by this Court's

15   orders.  There's a pattern here, and we are

16   prejudiced by it.  And we would ask that the

17   case be dismissed with prejudice.

18        The fallback would be that Mr. Medlock,

19   given his refusal to produce the document, which

20   relates to mitigation, as a sanction under Rule

21   37, be precluded from producing any evidence

22   whatsoever as to damages, because he has not met

23   his failure -- he has not met his burden to

24   prove mitigation and he's refusing to turn over

25   evidence relating to that, pursuant to this

1  Court's order.

2          And finally, I would ask that he pay

3  the costs of this deposition here today.  We

4  have not asked for costs in this case, the whole

5  way through; but I believe his behavior here

6  today, in violating the Court order with this

7  Court sitting here today, warrants that

8  sanction, as well.

9              THE COURT:  Excuse me.  Before

10  you snatch defeat out of the jaws of victory,

11  I'm going to deny the oral motion.  I'm denying

12  it without prejudice until the filing of a

13  written motion.

14          If the defendants file a motion to

15  dismiss, Mr. Medlock, you have 23 days in which

16  to respond to that.

17              Again, as I indicated before, I would

18  be inclined to grant that motion, if it's filed.

19  I would rather not to do.

20              THE WITNESS:  I understand.

21              THE COURT:  So I'm going to give

22  you one last chance to go get the calendar so

23  this deposition can be concluded.  Otherwise,

24  this deposition will be adjourned, discovery and

25  all other pretrial deadlines will be stayed, and

 1   we'll take up this motion in due course, and

 2   we'll determine whether anything is left of this

 3   case.

 4           Sir, I would rather that not happen,

 5   but it's your choice at this point.

 6               THE WITNESS:  And I appreciate

 7   you saying that, but I'll stay with my position,

 8   sir.

 9               THE COURT:  Very well, that will

10   be the order of the court.  The deposition is

11   hereby adjourned.  The defendants have until

12   Friday of next week to file the motion; and

13   again, on whatever date that motion is filed,

14   under our local rules, Mr. Medlock, you have 23

15   days in which to respond.

16               THE WITNESS:  I understand.

17               THE COURT:  The -- the discovery

18   cutoff, that was the subject of the anticipated

19   motion to extend, is deemed moot.  The final

20   pretrial conference is canceled.  The

21   dispositive motion deadline is vacated.

22       Anything else, gentlemen?

23               MR. ATES:  I don't believe so,

24   Your Honor.  There's one witness that he has

25   named that we were going to depose.  I presume

1    that's on hold pending this?

2                    THE COURT:  Regrettably, yes.

3            Mr. Medlock, anything else?

4                    THE WITNESS:  No, sir.

5                    THE COURT:  If defense would

6    prepare an appropriate order confirming today's

7    on-the-record discussion, I'd appreciate it.  If

8    you'd kindly send a copy to Mr. Medlock and give

9    him a reasonable opportunity to respond to it.

10                   MR. ATES:  Absolutely.

11                   MR. BADGEROW:  Thank you, Your

12   Honor.

13                   THE COURT:  Thank you.

14        (Hearing was concluded at 5:03 p.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3          I, Marilyn Romine Mattix, a Certified

 4    Shorthand Reporter of the State of Kansas, do

 5    hereby certify:

 6          That said hearing was taken down by me

 7    in shorthand at the time and place hereinbefore

 8    stated and was thereafter reduced to writing

 9    under my direction;

10          That I am not a relative or employee

11    or attorney or counsel of any of the parties, or

12    a relative or employee of such attorney or

13    counsel, or financially interested in the

14    action.

15          WITNESS my hand and seal this 31st day

16    of August, 2007.

17

18

19          _____

20              MARILYN ROMINE MATTIX, CSR, CCR, RPR
```